## STATE BANK OF MADISON v. A. M. JOYCE.[1]

December 18, 1942.

No. 33,180.

*Oscar G. Haugland,* for appellant.
*Grannis & Grannis* and *A. M. Joyce,* for respondent.

PIRSIG, JUSTICE.

On reconsideration, after oral argument, the former opinion filed July 17, 1942, but not published, is withdrawn and the following substituted:

[1]Reported in 7 N. W. (2d) 385.

Defendant's liability upon the promissory note sued upon in this case is conceded. The only question here is whether defendant is entitled to deduct anything therefrom by reason of the claim asserted in his counterclaim. The jury in its verdict found for defendant on his counterclaim and deducted the amount found due thereon from the verdict rendered in favor of plaintiff on the promissory note.

Defendant and his mother were the owners of a farm which they leased to Edgar Rekstad. Under the terms of the lease defendant was entitled to one-half the crops grown upon the farm. The remainder belonged to the tenant, Rekstad, but was subject to a chattel mortgage, given by the terms of the lease to defendant, securing such claims as defendant might have against the tenant under the lease.

In September 1937 defendant obtained a loan from plaintiff and gave his note, here sued upon. The purpose of the loan was to obtain money with which to pay for the threshing of the grain from the farm. It was contemplated by defendant and the bank that the grain would be stored in elevators at Milan, Minnesota, and storage tickets issued therefor. The bank agreed to make the loan, provided the storage tickets were given to it as security for the loan. This was done. The money was advanced by the bank immediately, the grain was threshed, and it was stored at the elevator of the Taplin Grain Company at Milan, which issued storage tickets for the grain received. Some corn was also delivered to the Monarch Elevator Company at Milan, Minnesota, and a storage ticket issued by it. These tickets were then delivered to the bank. With one exception, they were issued in the name of defendant and Rekstad. One of the tickets was issued in the name of defendant alone, but the grain which it represented was harvested under the lease mentioned above, and both the bank and defendant knew that Rekstad claimed his share in it. The tickets delivered to the bank were endorsed by defendant, but they did not have the endorsement of Rekstad.

Defendant claims that on or about January 1, 1938, and at numerous times thereafter, he requested the bank to procure a sale of the grain by the elevators, that the bank failed and refused to do so, and that consequently he sustained a loss by reason of storage costs and a decline in the market value of the grain. This forms the basis of his counterclaim.

It is the claim of defendant that at the time the loan was made the bank agreed to procure a sale of the grain by the elevators whenever defendant requested it to do so. The bank denies that such an agreement was made. Since the jury has found for defendant, the only question before this court is whether there is any evidence to sustain the finding of an agreement, the terms of which would impose liability on plaintiff for its failure to sell the grain when demanded.

Had the ownership of the grain, and the storage tickets representing it, been exclusively that of defendant, the evidence was such that a verdict for defendant would have been sustained. However, all but one of the storage tickets were in the name of defendant and Rekstad, and both the bank and defendant knew that Rekstad had or claimed an interest in the grain represented by the remaining ticket issued in the name of defendant alone. Had Rekstad signed or had he been willing to sign the tickets, or acceded to the sale of the grain, it is likewise clear that the verdict for defendant should stand. The fact is that Rekstad did not sign the tickets and refused to do so on request of defendant. A controversy existed between defendant and Rekstad over whether Rekstad owed defendant anything under the lease, and because of this dispute Rekstad refused to sign the tickets.

Without Rekstad's signature, the bank was not in a position to dispose of the grain by directing the elevators to sell it. To do so would have exposed the bank to liability for conversion of Rekstad's interest.

If there is any liability on the part of the bank for failure to comply with defendant's demands that the grain be sold, it can

only be on the ground that the bank as part of the loan agreement undertook to obtain the sale of the grain irrespective of Rekstad's possible interest in it. If such an agreement was made, it must have been one expressly made. In the absence of an express agreement, the only reasonable construction of the loan contract is that the pledgor, defendant, was to provide the bank with a sufficient title to the grain to make its disposition possible. It is unreasonable to suppose that a bank lending money should undertake to perfect the security which is offered it. Consequently, unless there is evidence which would justify a jury in finding an express agreement on the part of the bank to undertake this task, it must be held that it was a condition of the loan agreement that defendant, and not the bank, should obtain the consent of Rekstad to the sale of the grain or his endorsement of the storage tickets. This aspect of the case was first adequately presented to this court on the oral argument granted on rehearing. We have carefully reëxamined the record and have reached the conclusion that no testimony can be found which would support the finding of any such agreement. There was only the testimony of defendant on this question. His testimony in this respect amounts to no more than that the bank agreed to sell the grain when asked to do so by him. Who was to furnish an adequate title he does not say. Indeed, some of the letters of defendant to the bank demonstrably show that the bank was not to sell unless Rekstad's consent was obtained. In defendant's letter of December 3, 1937, to Anderson, cashier of the bank, including a ticket for corn, defendant says: "You may hold this storage ticket as collateral for our loan at your bank, keeping in mind the possible claim of Rekstad." Defendant claims that on February 2, 1938, he telephoned Anderson and "urged him to dispose of the grain and stop the running of storage on it and he again said that he would." Yet on April 20, 1938, when writing to the bank in reference to the corn, defendant said: "If Rekstad will indorse the draft to us, we will credit same on his rent and you may credit our note and surrender the

ticket to the elevator. *Otherwise, hold the ticket."* (Italics supplied.)

Corroborating testimony on the part of one Henkel adds little. It is only to the effect that he overheard a conversation between defendant and Anderson, the cashier of the bank. Again, this amounts to no more than an agreement to sell the grain when a request was made to do so. There is no testimony whatever by anyone that the bank agreed to obtain the consent or endorsement of Rekstad which would enable the bank to make the sale. Consequently, it remained for defendant to perfect the title in the storage tickets, and, having failed to do so, he cannot now claim that the bank was delinquent in failing to obtain the sale of the grain as requested.

The contention is made that the bank assumed to perfect the title to the storage tickets by undertaking the foreclosure of defendant's chattel mortgage under the lease on Rekstad's interest in the grain. The bank claims that the foreclosure proceedings which it undertook were instituted at the instance and on behalf of the defendant. The testimony is conclusively to that effect. Defendant, himself an attorney, drew up a notice of foreclosure, which appears to have turned out to be inadequate. He followed this with the drafting of a second notice. This was in turn redrafted and signed by the bank's usual attorney. It was in the name and on behalf of defendant and his mother. There is no testimony, not excepting that of defendant, to the effect that plaintiff agreed to undertake to foreclose defendant's chattel mortgage in its own interest and behalf.

The jury cannot be permitted to ignore these uncontradicted facts and base its verdict on the bald statement of defendant that the bank was acting on its own behalf. The view that by its efforts the bank had somehow lost the right to object to the imperfect title cannot be sustained.

The judgment of the lower court is reversed with directions to enter judgment for plaintiff for the full amount of its claim without deduction of any amount by reason of the counterclaim.